IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA                                    06-MC-9039

                    Plaintiff,                              OPINION AND ORDER

v.

JOSÉ MOISÉS LEÓN ANDRADE,
                    Defendant.
_____

PAPAK, Magistrate Judge:

        The government of Mexico seeks extradition of Joses Moises Leon Andrade pursuant to

18 U.S.C. § 3184 and the governing Extradition Treaty between the United States and Mexico.

Mexico Extradition Treaty, U.S. - Mex., May 4, 1978, 31 U.S.T. 5059.  Andrade is wanted by

Mexican authorities based on allegations that he was involved in a homicide.  Andrade seeks to

persuade this court that the petition to extradite him should be denied because the government of

Mexico has not complied with the requirement of the governing Extradition Treaty (treaty), and

because the evidence presented at the extradition hearing failed to establish probable cause that

Andrade committed the crime charged.

FACTUAL AND PROCEDURAL SUMMARY

Andrade was arrested by the United States Marshals on February 14, 2006, pursuant to a Warrant for Arrest and a Complaint for Provisional Arrest with a View Toward Extradition (Complaint). The Mexican government seeks extradition of Andrade for the murder of Santana Jaimes Pineda in Michoacan, Mexico, in January of 2004, as covered by and punishable under Articles 260 and 264 of the Penal Code of the State of Michoacan.

Andrade made his first appearance on February 15, 2006, and was detained pending further proceedings. A subsequent Motion for Release Pending Extradition Hearing was denied. An extradition hearing was held on August 8 and August 25, 2006.

At the extradition hearing, the government relied on the Complaint and the documents which it summarizes, see Government's Exhibit 1 for Supplemental Extradition Hearing, in support of its request that this court certify to the Secretary of State that a warrant may be issued for the surrender of Andrade to the appropriate authorities of Mexico.

Those documents reveal that law enforcement authorities in Cuitzeo, Michoacan, Mexico discovered a dead body, later identified as Santana Jaimes Pineda (Pineda), on or about January 14, 2004, near a stream in the village of Chupicuaro. Investigation revealed that Pineda died as a result of gunshot wounds piercing her neck and thoracic-abdominal cavity.

Andrade and Pineda were lovers and traveled to Mexico, separately,[1] in December 2003. Pineda stayed at the only hotel in Cuitzeo and the manager recognized Andrade as arriving with

---

[1]Andrade and Pineda both lived in Oregon. Andrade was married and traveled to Mexico with his wife and daughter. Pineda was not married and traveled to Mexico alone.

Pineda and picking her up, but not staying overnight.  Andrade paid the manager for an additional day's rent of the room, left with Pineda and neither Andrade or Pineda returned that night.  Pineda was never seen alive again.  Four days later, Andrade returned alone to the hotel to retrieve Pineda's suitcase.  The staff refused to give it to him because the manager was not there.

Andrade then instructed his niece to pick up the suitcase, not to tell anyone about the suitcase, and to burn its contents, insisting that she burn a video tape inside a video camera which was in the suitcase. The niece considered the request unusual because Andrade never called her and becasue he made the request with such urgency. On January 5, 2004, the niece, with her sister and mother, went to the hotel, retrieved the suitcase, and burned its contents. Andarde later called his niece and told her he sent $50 for the favor. Following his return to the United States, Andrade provided conflicting information about his contact with Pineda and her whereabouts after they parted. Pineda had previously stated that Andrade had abused her and that he wanted to kill her.

An autopsy of Pineda was conducted and concluded that the criminal events leading to her death likely took place in a location different from where she was found and more than one person may have been involved.  It also stated that "death took place in a period no longer than 4 or 3 days at the time it was removed, being removed on January 14, 2004."

Andrade proffered evidence that he returned to the United States on January 5, 2004, and was at work January 5 through 9.  Prior to the August 25 hearing, Andrade submitted affidavits from three family members who indicated that Andrade "was not gone from home overnight during the weekend of January 10 and 11, 2004."

Andrade now argues that the extradition request must fail because the government of

Page 3 - OPINION AND ORDER

Mexico has failed to produce the documents required by the treaty and because the evidence, particularly in light of Andrade's alibi defense, does not establish probable cause that he committed the crime charged.


ANALYSIS

Each extradition treaty between the United States and a foreign nation is *sui generis*, and as a contract between two sovereigns, sets forth its own law. *Extradition of Cervantes-Valles,* 268 F. Supp. 758, 770 (S.D. Tex. 2003), *citing Extradition of Nacif-Borge,* 829 F. Supp. 1210, 1213 (D. Nev. 1993). Examining the treaty at issue here, this court will determine (a) whether the government of Mexico failed to produce required documents, and (b) whether the evidence justifies commitment for trial.

A.      Required Documents

Article 10 of the treaty provides, *inter alia*, that the request for extradition shall be accompanied by "the text of the legal provisions describing the essential elements of the offense" and "the text of the legal provisions describing the punishment for the offense." Further, the text of those legal provisions must "be accompanied by a translation in the language of the requested Party."

Andrade claims that the documents submitted by Mexico in support of its extradition request fail to charge Andrade under a specific homicide statute and fail to specify the elements of the crime, that the translation of those documents is deficient and unreliable, and that other potentially relevant statutes are not translated. These claims, however, are not supported by the record.

Prior to the August 25 extradition hearing, the government filed Government's Exhibit 1 for Supplemental Extradition Memorandum (# 27), which includes the Certificate to be Attached to Documentary Evidence Accompanying Requisitions in the United States for Extradition and thirty-four attached exhibits, in original Spanish and translated into English.  Exhibit 31 of that packet is the charging instrument and indicates that Andrade is charged under the simple homicide statute, Article 260 of the State Criminal Code. In Exhibit 33, the court makes findings and issues a warrant for violation of Article 260.  The crime of homicide and its specific elements are set forth at page 2 of Exhibit 33. In addition the penalty provision for Artice 260, Article 264, is translated at Exhibit 1 to the packet.

In case there is any ambiguity caused by the translator's note to Exhibit 1 ("the rest of the Articles in the above mentioned pages were not translated since they are not linked to the crime attributed to the accused person"), the charging document itself, Exhibit 31, p. 8, clearly sets forth the elements of aggravated homicide and its punishment, found in Article 267 and related to Article 279(I).

Based on the foregoing, this court finds that the Mexican government has provided all of the necessary information required by the treaty in order to succeed in its petition for extradition. To the extent there is any ambiguity in those document or their translation, I note that there is no prejudice to Andrade who has been represented by the Federal Defender's office with the assistance of an interpreter from the day following his arrest.  The fact that Andrade's lawyer was able to argue that the translation provided was deficient and unreliable belies any suggestion that Andrade was not given adequate notice of the charges against him.

B.    Probable Cause

Page 5 - OPINION AND ORDER

Under both the relevant extradition statute, 18 U.S.C. § 3184, and the treaty in question,[2] the court must determine whether probable cause exists to support the allegations of the foreign government.   The function of the magistrate is to "determine whether there is competent evidence to justify holding the accused to await trial, and not to determine whether the evidence is sufficient to justify a conviction."  *Collins v. Loisel,* 259 U.S. 309, 314-15 (1922).  The probable cause standard in extradition proceedings is analogous to the quantum of proof required in preliminary hearings in federal court.  *Bovio v. United States,* 989 F.2d 255, 259 (7th Cir. 1993). Under this standard, the government must offer evidence "sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt."  *Coleman v. Burnett,* 477 F.2d 1187, 1202 (D.C.Cir. 1973).

> The probable cause standard is akin to a *prima facie* standard. Whatever else may be implied, probable cause means that sufficient evidence has been presented to the satisfaction of the court to warrant bringing the relator to trial in accordance with the laws of the requesting state, not simply that he is suspected of criminality with no basis in fact to support it.

M. Cherif  Bassiouni, International Extradition 829 (4th Ed. 2002).

The evidence summarized above amply supports a finding of probable cause[3] and Andrade does not disagree.  Instead Andrade argues that the evidence he has submitted, in the form of a classic alibi defense, negates a finding of probable cause and mandates denial of the extradition request.  The government argues that this evidence, which merely controverts the existence of probable cause or raises a trial defense, is inadmissible at an extradition hearing. In

---

[2] "Extradition shall be granted only if the evidence be found sufficient, according to the laws of the requested Party, either to justify the committal for trial of the person sought if the offense of which he has been accused had been committed in that place...." Article 3, United States-Mexico Extradition Treaty.

the alternative, the government urges that even considering Andrade's alibi there is sufficient evidence supplied by the Mexican government to support a finding of probable cause.

The admission of alibi evidence at an extradition hearing has a murky history.  Generally, the right of fugitive to present evidence on his own behalf is limited. *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978) (Relator not permitted to introduce evidence on issue of guilt or innocence, but only evidence that explains case for probable cause).  *See also Barapind v Enomoto*, 360 F.3d 1061, 1069 (9th Cir. 2004).  In that regard, "[E]vidence of alibi or of facts contradicting the demanding country's proof or of a defense such as insanity may properly be excluded from the magistrate's hearing."  *Shapiro v Ferrandina*, 478 F.2d 894, 901 (2d Cir. 1973), citing *Charlton v Kelly*, 229 U.S. 447, 456 (1913).  However, alibi evidence may be admissible if it absolutely negates or obliterates probable cause.  *Maniero v. Gregg,* 164 F.3d 1199, 1207 (9th Cir. 1999); *In re Extradition of Gonzalez,* 52 F. Supp. 2d 725, 725 (W.D. La. 1999).

From the disparate rulings on the admissibility of alibi evidence in extradition hearings, cases, this court gleans two recurrent themes. First, an extraditee should not be allowed to turn an extradition hearing into a full blown trial on the merits.  See *In the Matter of the Extradition of Sindona,* 450 F. Supp 672, 685 (S.D.N.Y. 1978). Secondly, in an appropriate case  alibi evidence would be admissible where it is so clear cut that the government's evidence of probable cause is fully negated.  See, e.g., *In the matter of the Extradition of Cervantes Valles*, 268 F. Supp. 2d 758 (S.D. Tex. 2003) ("Because the Respondent presently before the court is clearly not Cervantes-Valles, the extradition request must fail").

The evidence of alibi in this case is not clear cut and does not completely negate or obliterate the existence of probable cause.  It is, in the first instance, dependent on the finding of

Page 7 - OPINION AND ORDER

time of death contained in the autopsy, a matter that could be rebutted or explained by the government at trial. It is also dependent upon the credibility of Andrade's family members who place him in Oregon the weekend of January 10 and 11. The credibility of those witnesses is always subject to attack and is normally a matter for the jury. Finally, the alibi evidence would be of no value if Andrade's involvement in the homicide was as an aider and abetter.[4]

## CONCLUSION

Based on the foregoing, this court finds that the Mexican government has provided all of the necessary information required by the treaty to succeed in its petition for extradition. The court also finds that the evidence submitted in connection with the extradition request establishes probable cause to justify commitment for trial.

For the foregoing reasons, the request of the government of Mexico for the extradition of Jose Moises Leon Andrade is granted. This ruling will be certified to the Secretary of State, together with a copy of all evidence received in these proceedings, so that a warrant may issue upon the request of the proper authorities in Mexico for the surrender of Andrade according to the treaty. Andrade will remain in the custody of the United States Marshals until his surrender to Mexican authorities.

Dated this 25th day of September, 2006.

        /s/ Paul Papak          
Honorable Paul Papak
United States Magistrate Judge

---

[4]Documents submitted by Mexico indicate that after the death of Pineda, a member of her family overheard Andrade say "I'm very pleased with the job made by those two persons in Cuitzeo regarding Santana."

Page 8 - OPINION AND ORDER